**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| EMILY AUTUMN LEIDICH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-3007 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff/Claimant Emily Autumn Leidich petitions this Court to review the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving her claim for disability insurance benefits ("DIB"). ECF No. 10 at 1. The Court has considered the record and the parties' briefs. ECF Nos. 10, 12, 13. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court affirms the judgment of the Social Security Administration.

## PROCEDURAL BACKGROUND

On November 20, 2020, Leidich applied for DIB under Title II of the Social Security Act. R. 306–10. Her claim was denied initially and on reconsideration. R. 168–72, 179–86. On Leidich's request, an Administrative Law Judge (ALJ) held two hearings to review her claim. R. 67–106, 192–93. At the conclusion of the first hearing, the ALJ ordered a medical expert to review the record and testify at the second hearing. *See* R. 105. Following the second hearing, the ALJ issued a decision in which the ALJ found that Leidich was not disabled. R. 45–66. Leidich requested that the Social Security Appeals Council review the ALJ's decision. R. 303–

05. On July 29, 2025, the Appeals Council denied Leidich's request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security Administration. R. 1–6. Leidich then timely petitioned for judicial review in this Court on September 11, 2025. ECF No. 1.

**THE ALJ'S DECISION**

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ determined that Leidich "did not engage in substantial gainful activity during the period from her alleged onset date of February 24, 2015, through her date last insured of September 30, 2022." R. 51. At step two, the ALJ found that Leidich had the following severe impairments: "Spine

Disorder; Chronic Migraine Headaches without Aura; Posttraumatic Stress Disorder; Generalized Anxiety Disorder; Major Depressive Disorder; and Occipital Neuralgia." R. 51. At step three, the ALJ determined that Leidich did not "have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 51. The ALJ further determined that Leidich had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except she is capable of frequently reaching overhead. She can handle items frequently, can perform fine fingering frequently, and can feel frequently. She can climb ramps and stairs occasionally but can never climb ladders, ropes, or scaffolds. She can maintain balance over narrow, slippery, or erratically moving surfaces occasionally. She can occasionally stoop, kneel, crouch and crawl. She can never work at unprotected heights or in close proximity, meaning within arms-reach, of dangerous moving mechanical parts. She can make simple work-related decisions. She is limited to jobs that require no more than occasional interactions with people in the workplace, such as coworkers, supervisors, or the public. She is able to tolerate few changes in a routine work setting, defined as a stable work environment where workplace and work processes remain generally the same for 2/3 of the time.

R. 53. At step four, the ALJ determined that Leidich had no past relevant work. R. 58. At step five, the ALJ found that, "considering [Leidich's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Leidich] could have performed." R. 59. As a result, the ALJ concluded that Leidich was not disabled. R. 60.

**STANDARD OF REVIEW**

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the

Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

## DISCUSSION

Leidich argues that the ALJ erred in two primary ways. First, Leidich contends that the ALJ failed to account for her moderate concentration, persistence, or pace limitation in the RFC. ECF No. 10 at 7. Second, Leidich contends that the ALJ improperly assessed the RFC. ECF No. 10 at 15. The Court addresses each argument in turn.

### I. The ALJ Accounted for Leidich's Moderate Concentration, Persistence, or Pace Limitation.

Leidich contends that the ALJ erred because the ALJ failed to account for her moderate limitation in concentration, persistence, or pace. ECF No. 10 at 7. The Court disagrees.

If a claimant alleges a mental impairment, the ALJ must determine the degree to which the mental impairment limits four types of mental functions, one of which is the ability to maintain concentration, persistence, or pace ("CPP"). *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017); 20 C.F.R. § 404.1520a(c)(3). An ALJ measures a claimant's CPP limitation by using a "five-point scale: [n]one, mild, moderate, marked, and extreme." *Patterson*, 846 F.3d at 659 (citation omitted). "A 'moderate' limitation in CPP means that a claimant's ability to sustain CPP 'independently, appropriately, effectively, and on a sustained basis is fair.'" *Nathan Y. v. Bisignano*, Civil Action No. DRM-24-3071, 2025 WL 2145887, at *3 (D. Md. July 29, 2025) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3)).

If an ALJ finds that a claimant has a moderate CPP limitation, the ALJ must account for that limitation in the RFC. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). An ALJ may account for a moderate CPP limitation by satisfying one of three conditions. First, the ALJ may include an RFC limitation that accounts for the claimant's moderate CPP limitation. *Id.* at 638. Notably, however, an ALJ does not account for a moderate CPP limitation by limiting the claimant to "simple, routine tasks or unskilled work" in the RFC without further explanation. *Id.* (citation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in [CPP]." *Id.* Second, the ALJ may explain in the RFC analysis "why a claimant's moderate limitation in [CPP] … does not translate into a limitation in the claimant's RFC" or explain why a limitation to simple, routine tasks sufficiently addresses a claimant's moderate CPP limitation. *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020) (citation modified). Third, an ALJ may find persuasive a medical opinion that provides "detailed findings" accounting for the claimant's moderate CPP limitation and that "provide[s] substantial support for" the RFC. *Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017); *Nathan Y.*, 2025 WL 2145887, at *3.[1] Remand is warranted if the ALJ fails to satisfy one of these

---

[1] Leidich contends that this case is distinguishable from *Sizemore* such that the holding in *Sizemore*—that an ALJ can account for a claimant's moderate CPP limitation by finding persuasive a medical opinion that supports the RFC—does not apply here. ECF No. 10 at 12 n.9. Leidich argues that the holding in *Sizemore* was based in part on the "treating physician rule." Under this rule, which applied to Social Security claims filed before March 2017, ALJs could give the medical opinions of a treating physician controlling weight when formulating a claimant's RFC. 20 C.F.R. § 404.1527(c)(2) (describing treating physician rule). Because *Sizemore* involved a claimant who filed a Social Security claim prior to 2017, the treating physician rule applied in that case. *See id.* § 404.1527; 878 F.3d at 74. As a result, Leidich claims, the *Sizemore* Court's holding was premised on the ALJ giving the medical opinions at issue controlling weight, whereas here, the ALJ cannot, as a matter of regulation, assign the controlling weight necessary to account for Leidich's moderate CPP limitation. This argument is mistaken for two reasons. First, the holding in *Sizemore* was not premised on the treating physician rule. In fact, the treating physician rule

three conditions. *See, e.g.*, *Nathan Y.*, 2025 WL 2145887, at *3–5; *Caitrin M. v. Kijakazi*, Civil Action No. BAH-22-2785, 2023 WL 5300318, at *4–5 (D. Md. Aug. 17, 2023); *George T. v. Dudek*, Civil Action No. CDA-24-0117, 2025 WL 948488, at *4–5 (D. Md. Mar. 28, 2025).

Here, the ALJ determined that Leidich had a moderate CPP limitation. R. 52. The ALJ then found that Leidich had the RFC in part to

> make simple work-related decisions. She is limited to jobs that require no more than occasional interactions with people in the workplace, such as coworkers, supervisors, or the public. She is able to tolerate few changes in a routine work setting, defined as a stable work environment where workplace and work processes remain generally the same for 2/3 of the time.

R. 53.

After describing Leidich's RFC, The ALJ adequately explained, under the second condition, why a limitation to "simple work-related decisions" in a "routine work setting" accounted for Leidich's moderate CPP limitation. First, the ALJ largely adopted the RFC suggested by the opinions of the state agency medical consultants who opined on Leidich's mental abilities:

> State agency medical consultant Dr. Richard Luck, Ph.D. found that [Leidich] could manage simple, routine tasks in a low-stress work environment, defined as only occasional decision making and occasional changes in the work setting. (2A). These findings were generally affirmed and adopted by Dr. D. Walcutt, Ph.D. at the Reconsideration level who noted that [Leidich] would now only have moderate limitation in her ability to interact with others and would have only mild limitation in adapting or managing herself. (3A). However, the functional limitations remain and they are generally persuasive in that they are well supported by review and summary of [Leidich's] historical counseling records as well as her presentation at the consultative examinations. Taken together, these factors are consistent with her

was neither raised as an issue by the claimant nor discussed by the Fourth Circuit in its opinion—not once. *Sizemore*, 878 F.3d. Second, even if the *Sizemore* Court based its holding in part on the treating physician rule, which it did not, the ALJ never assigned the medical opinions at issue in *Sizemore* controlling weight such that the treating physician rule might apply. *See id.* at 80 (assigning "little weight" to opinion of NP Williams and "significant weight" to opinions of Dr. Ahsanuddin and Dr. King). For these reasons, the Court rejects Leidich's argument, and the holding in *Sizemore* applies in this case.

> continued ability to perform necessary tasks for childcare and her generally benign mental status examinations across the period at issue that do not address such extreme allegations such as disassociation or amnesia. Therefore, these findings have generally been adopted when forming the [RFC] statement herein.

R. 57–58. Thus, in light of Leidich's ability to raise children along with benign mental status examinations, the ALJ agreed with the findings of the medical opinion that suggested limiting Leidich to "simple, routine tasks in a low-stress work environment" to account for her mental limitations. *See id.* Second, the ALJ further explained in the RFC assessment why no more than the above mental limitations were necessary for Leidich by noting the following:

> [T]he record generally reflects a trend of ongoing supportive counseling to address frustrations and stressors related to [Leidich's] changed life circumstances, her experience of physical pain, and difficulty coping with emotional trauma from her childhood and family life. While she presented with an anxious and depressed mood at times, *she typically demonstrated normal abilities for memory, attention, concentration and cognition*.

R. 56 (emphasis added). Thus, in addition to noting Leidich's ability to perform daily activities and an absence of severe mental status examinations, the ALJ specifically found Leidich had a "normal" ability to perform functions associated with CPP.[2]

Considered together, the ALJ's evaluation of the state agency medical consultant opinions and the ALJ's RFC assessment accounted for Leidich's moderate CPP limitation under the second condition. *See Shinaberry*, 952 F.3d at 121–22. The ALJ explained how Leidich's activities of daily living, benign mental status examinations, and normal memory, attention,

---

[2] Leidich warns that some statements in the record cannot account for her moderate CPP limitation. *See* ECF No. 10 at 12 n.9. In particular, the Court agrees with Leidich that "[s]tatements that you are … able to work, or able to perform regular or continuing work" cannot account for Leidich's moderate CPP limitation because such statements involve "issues reserved to the Commissioner" and are therefore "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c), (c)(3). Here, however, the ALJ does not rely on such statements in the record to account for Leidich's moderate CPP limitation. Accordingly, the ALJ did not err on this ground.

concentration, and cognition justified a mental limitation to "simple work-related decisions" in a "routine work setting." As a result, the ALJ did not err on this ground.

## II. The ALJ's Assessment of the RFC Does Not Warrant Remand.

Leidich argues that the ALJ erred in assessing the RFC because: (A) the ALJ improperly assessed Leidich's ability to perform light work; and (B) the ALJ failed to address Leidich's ability to work on a regular and continuing basis. ECF No. 10 at 15–22. The Court addresses each argument in turn.

### A. The ALJ's assessment of Leidich's ability to perform light work does not justify remand.

A claimant's RFC is defined as the most work that a claimant can perform despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). To assess a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas*, 916 F.3d at 311 (citation omitted). While the ALJ must consider all of a claimant's physical and mental impairments, the ALJ need not discuss every piece of evidence relating to those impairments. *See id.* at 312 ("To be sure, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision.'" (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014))).

Leidich argues that the ALJ erred in assessing Leidich's ability to perform light work by failing to assess Leidich's exertional functions: standing, walking, sitting, lifting, carrying, pushing, and pulling. ECF No. 10 at 19; 20 C.F.R. § 404.1569a(b). The Court reviews Leidich's ability to stand, walk, and sit before turning to her ability to lift, carry, push, and pull.

### 1. Standing, Walking, and Sitting

Leidich contends that the ALJ erred by failing to draw a conclusion or to perform a function-by-function analysis of Leidich's ability to stand, walk, or sit. ECF No. 10 at 21. Leidich also argues that the ALJ failed to resolve contradictory evidence about Leidich's walking issues. ECF No. 10 at 21. The Court disagrees.

First, by limiting Leidich to light work, the ALJ drew a conclusion about Leidich's ability to stand, walk, and sit. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).[3] Thus, light work requires the ability to stand and walk intermittently for 6 hours and sit intermittently for 2 hours of an 8-hour workday. Accordingly, an ALJ who limits a claimant to light work without stating specific standing, walking, and sitting limitations implicitly finds that the claimant is limited to standing, walking, and sitting in accordance with the definition of light work. *See Derek P. v. Kijakazi*, Civil Action No. CDA-23-010, 2023 WL 7324727, at *4 (D. Md. Nov. 7, 2023) ("[L]imitation to light work implicitly includes a finding that the plaintiff [can] stand or walk off and on for a total of approximately six hours of an eight-hour workday[.]" (quoting *Robinson v. Astrue*, No. 2:10-185-DCN, 2011 WL 4368416, at *8 (D.S.C. Feb. 18, 2011), *R. & R. adopted*, 2011 WL 4368396 (D.S.C. Sept. 19, 2011))). Here, the ALJ limited Leidich to light work and thus implicitly found that Leidich could stand and walk intermittently for 6 hours and

[3] "Social Security Rulings, or SSRs, are interpretations by the Social Security Administration of the Social Security Act." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 n.9 (4th Cir. 2021) (citation modified), *superseded by regulation on other grounds*, *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025). "They do not carry the force of law but are binding … on ALJs when they are adjudicating Social Security cases." *Id.* (citation modified).

sit intermittently for 2 hours of an 8-hour workday. R. 53. Therefore, the ALJ did not err because the ALJ, in fact, drew a conclusion about Leidich's ability to stand, walk, and sit.

Second, although the ALJ did not perform a function-by-function analysis, the ALJ's assessment of Leidich's ability to stand, walk, and sit is nevertheless supported by substantial evidence. If an ALJ fails to conduct a function-by-function analysis, remand is not required per se. *Mascio*, 780 F.3d at 636. Instead, "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Here, the ALJ committed no such error.

The ALJ's standing, walking, and sitting limitations are supported by substantial evidence based on the ALJ's discussion of the medical evidence. In particular, the ALJ traced how Leidich's cranial, spinal, and neurological issues limited her mobility from 2015 through 2022, the year of her date last insured. R. 55–56. The ALJ found that (1) although Leidich repeatedly reported muscle and back pain, medical exams typically reported normal strength, gait, and range of motion; (2) much of Leidich's cranial pain was addressed through Botox injections; and (3) degenerative changes in the spine were generally benign and spinal pain was mitigated through a laminectomy and fusion surgery in July 2021. *See* R. 55–56. These findings are adequate to conclude that Leidich could perform the standing, walking, and sitting limitations of light work.

The ALJ's standing, walking, and sitting limitations are also supported by substantial evidence based on the ALJ's evaluation of the medical opinion of Subramaniam Krishnamurthi, M.D. At the conclusion of Leidich's first hearing before the ALJ, the ALJ ordered a medical expert to review the record and testify to Leidich's functional abilities. R. 105. At the second

hearing before the ALJ, Dr. Krishnamurthi testified in part that Leidich "would be able to lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk for 6 hours in an 8-hour workday." R. 54 (citing R. 76). The ALJ found this opinion persuasive such that "it has broadly informed the [RFC] statement herein." R. 55. Thus, the ALJ assigned persuasive value to Dr. Krishnamurthi's opinion that Leidich could perform the abilities that make up the definition of light work, including the sitting and standing limitations. This finding is adequate to conclude that Leidich could stand, walk, and sit subject to the limitations of light work. *See Melinda M. v. Bisignano*, Civil Action No. CDA-24-0975, 2025 WL 1668608, at *4 (D. Md. June 13, 2025) ("By assigning persuasive value to medical opinions and incorporating their suggested limitations into the RFC, the ALJ sufficiently addressed Plaintiff's ability to perform light work."), *recons. denied*, 2026 WL 1981014 (D. Md. July 9, 2026).

Finally, Leidich contends that the ALJ failed to address contradictory evidence about her ability to walk. Leidich argues that medical exams in 2021 and 2022 stated that Leidich had an antalgic gait (a limp), that these records contradict the ALJ's finding that "examinations of record ... consistently note normal ... gait," and that the contradiction warrants remand. ECF No. 10 at 21–22; R. 57; R. 2293, 2300, 2313, 2327, 2339, 2378 (reporting antalgic gait from February 19, 2021, to July 1, 2022).

The Court disagrees. To the extent these records contradict the ALJ's finding above, the contradiction is resolved by reviewing the RFC assessment "as a whole." *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (holding subsequent steps of sequential evaluation process provided substantial evidence for ALJ's step three finding); *see, e.g.*, *Christopher M. v. Bisignano*, Civil Action No. DRM-24-2922, 2026 WL 352985, at *5 (D. Md. Feb. 9, 2026) ("When evaluating an ALJ's decision for substantial evidence, the reviewing court reads the

ALJ's decision 'as a whole.'" (citation omitted)). Earlier in the RFC assessment, the ALJ considered the medical evidence from 2021 and 2022 and found that "[e]valuations for … 2021 were … generally benign" and that "[e]valuations in 2022 … document that [Leidich's] [July 2021] surgery was generally successful in terms of reducing her overall pain levels. She continued to present in no acute distress despite generalized reports of dysfunction that are not fully consistent with otherwise normal physical examinations." R. 55–56. To support this finding, the ALJ provided eight citations to the record, including a citation to a medical exam within the same set of records that reported Leidich had an antalgic gait, as well as a July 27, 2022, medical exam that reported that Leidich's "[g]ait and station are normal." R. 56 (citing 24F/9, R. 2286, and 27F/2, R. 2541); *see also* R. 2544 (reporting "[g]ait and station are normal" during August 17, 2022, medical exam); R. 2550 (same on August 31, 2022); R. 2554 (same on September 23, 2022). Accordingly, "although the ALJ's explanation was cursory, [the Court is] satisfied that the ALJ considered the records [Leidich] cites" and that any alleged contradiction is resolved by the ALJ's discussion of the medical records in 2021 and 2022. *Smith*, 457 F. App'x at 328. The Court thus rejects Leidich's argument.

Based on the ALJ's discussion of both the medical evidence and opinions, the ALJ's findings regarding Leidich's ability to stand, walk, and sit are supported by substantial evidence.[4]

[4] In her reply brief, Leidich contends that the ALJ's evaluation of the state agency medical consultants' standing and walking opinions was not supported by substantial evidence. ECF No. 13 at 5–6. If a claimant raises an argument for the first time in their reply brief, however, that argument is typically waived. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court." (citation omitted)); *Bunton v. Colvin*, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (collecting cases). Here, because Leidich first disagreed with the ALJ's evaluation of the state agency medical consultants' medical opinions in her reply brief, the issue is waived, and the Court does not address it.

**2. Lifting, Carrying, Pushing, and Pulling**

Leidich also argues that the ALJ erred by failing to draw conclusions or perform a function-by-function analysis of Leidich's ability to lift, carry, push, and pull. ECF No. 10 at 21. Even if the ALJ erred, however, Leidich has not met her burden to show that such an error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Josiah T. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022). If a claimant does not explain how an ALJ's failure to assess these exertional functions would produce a different result, the ALJ's alleged error is harmless. *William C. v. Kijakazi*, Civil Action No. BAH-21-2768, 2022 WL 17850362, at *4 (D. Md. Dec. 22, 2022) ("[A]ny failure by the ALJ to perform a function-by-function analysis of Plaintiff's ability to carry, lift, push, or pull, where, as here, there is no evidence that more robust analysis would lead to a different result, constitutes harmless error."); *Derek P.*, 2023 WL 7324727, at *4 (same).

Here, Leidich argues that a specific analysis of her ability to lift, carry, push, and pull was necessary for the ALJ to find that Leidich could perform light work. ECF No. 10 at 19–20. This is not so. "[T]he primary difference between sedentary and most light [work]" is that light work "requires a good deal of walking or standing." SSR 83-10, 1983 WL 31251, at *5. Accordingly, because the ALJ adequately discussed Leidich's physical limitations, chief among them standing, walking, and sitting, from 2015 to 2022, limiting Leidich to light work was supported by substantial evidence. *See supra* section II.A.1. Leidich has not otherwise cited evidence in the record that the ALJ did not consider regarding her ability to lift, carry, push, and pull, or explain why an analysis of these functions would result in a limitation to sedentary work. As a result, the ALJ's alleged error is harmless.

Leidich's ability to sustain light work, particularly her ability to stand, walk, and sit, is supported by substantial evidence, and any alleged error regarding the ALJ's analysis of Leidich's ability to lift, carry, push, and pull is harmless.

**B. The ALJ implicitly addressed Leidich's ability to work on a regular and continuing basis.**

Leidich suggests that the ALJ failed to assess her ability to work on a "regular or continuing basis," which is defined as "8 hours a day, for 5 days a week." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); ECF No. 10 at 16, 19. This is incorrect. An ALJ's RFC determination "implicitly contain[s] a finding that [a claimant] physically is able to work an [8-]hour day." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006); *see also Timothy M. v. Kijakazi*, Civil Action No. BAH-22-1246, 2023 WL 3280155, at *5 (D. Md. May 5, 2023) ("[B]ecause 'an RFC determination implicitly contains a finding that [a] plaintiff is able to work an [8]-hour work day, the ALJ's failure to explicitly state that as part of the RFC is immaterial.'" (citation omitted)). Thus, based on the RFC determination here, the ALJ implicitly found that Leidich could perform light work for 8 hours a day and 5 days per week. As a result, the ALJ did not err.

The ALJ's assessment of Leidich's ability to perform light work does not justify remand and the ALJ did not err in assessing Leidich's ability to work on a regular and continuing basis. As a result, remand of the ALJ's assessment of the RFC is unwarranted.

Because the ALJ did not err in accounting for Leidich's moderate CPP limitation and remand on the ALJ's RFC assessment is unwarranted, the Court affirms the ALJ's judgment.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is AFFIRMED. A separate order follows.

Date: August 19, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge